**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

R.N.G.,

        Petitioner,

    v.

FERETI SEMAIA, et al.,

        Respondents.

No. 5:26-cv-2839-DSR

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS FOR IMMEDIATE RELEASE**

## 1.    INTRODUCTION AND PROCEDURAL BACKGROUND

On May 26, 2026, Petitioner R.N.G.,[1] a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since on or about October 20, 2025, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of his constitutional right

---

[1] In his Petition, Petitioner uses only his initials, rather than his full name, and explains in a footnote that he does so to protect his privacy. See Pet. at ECF p. 2, n. 1. Respondents devote an entire page of their Answer to an objection to such use without first filing a noticed motion to proceed by pseudonym. See Answer at ECF p. 5, ln. 9 – ECF p. 6, ln. 10. This caused Petitioner then to spend more than four pages in his Reply addressing the pseudonym issue.

This issue has no substantive bearing on the analysis of the merits of this case. Respondents show no prejudice from Petitioner's use of the pseudonym in the Petition. They know perfectly well who Petitioner is and were able to argue the factual particulars of his detention. In fact, they attached to their Answer documents from Petitioner's immigration file showing his full name. In light of those circumstances, the Court will therefore not address the pseudonym issue any further. With the deluge of immigration detentions being pursued by Respondents, and the flood of habeas petitions to this Court resulting from them, this skirmish over Petitioner's use of his initials instead of his full name is not the best use of time – either the parties' or the Court's.

to due process.  See generally Petition (Doc. No. 1).  The Petition names as Respondents the Warden of the Adelanto ICE Processing Center where Petitioner is detained, the Acting Attorney General, the Secretary of the Department of Homeland Security, the Acting Director of ICE, and the Acting Los Angeles ICE Field Office Director (collectively "Respondents").  Id.

Concurrently with filing the Petition, Petitioner also voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and the entry of judgment.  See Doc. No. 4.  The case became fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases.  See General Order 26-05 at Ex. "A" (Doc. No. 6); see also Doc. No. 9.

Pursuant to General Order 26-05, Respondents filed their Answer on June 3, 2026, and Petitioner filed his Reply on June 8th.  See Doc. Nos. 11, 12.  The Court has read and considered all papers filed by each side.  For the reasons discussed below, the Court **GRANTS** the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

2.    **FACTUAL BACKGROUND**

Petitioner is a native and citizen of Honduras.  Pet. at ¶ 14.  After fleeing Honduras due to his experience with significant gang violence, Petitioner first entered the United States on or about November 24, 2023, without inspection, and was apprehended by immigration officers.  Id.  Customs and Border Patrol ("CBP") officials initially detained Petitioner, then released him on an Order of Release on Recognizance ("ROR"), with a Notice to Appear initiating removal proceedings.  Id.

Following his release, Petitioner settled in Long Beach, California, married a United States citizen, and had two children.[2]  Id. at ¶ 15.  Petitioner took a job in construction to support his family.  Id.  Additionally, while released, Petitioner

---

[2]    The younger of the children was born in April 2026, after Respondents re-detained Petitioner.  Id.

hired counsel to assist with immigration relief, applied for asylum, and "his wife was working on petitioning for him so he could eventually apply for lawful permanent residency."  Id. at ¶ 16.  Petitioner has no criminal history.  Id. at ¶ 19.

On October 20, 2025, after living in the United States for nearly two years, Petitioner was detained by CBP officials during a large-scale raid at a local Home Depot.  Id. at ¶ 17.  Petitioner, who initially ran from the masked agents dressed in plain clothes and tactical gear, was apprehended and arrested without notice, a warrant, or a process for him to contest his re-detention.  Id.  After being transferred to ICE custody, Petitioner was initially held for five days in the basement of a building in downtown Los Angeles, then transferred to the Adelanto ICE Processing Center, where he is currently detained.  Id. at ¶ 18.

Respondents do not contest any of these facts in their Answer.  They add, however, that on February 17, 2026, Petitioner was ordered removed, but timely appealed that order; thus, he is not subject to a final order of removal.  See Answer at ECF p. 3, lns. 3-6.  They further add that on May 6, 2026, "Petitioner received a Rodriguez bond hearing pursuant to C.F.R. § 1236, which he withdrew voluntarily."[3]  Id. at lns. 7-8.

Petitioner now challenges his ongoing detention as unlawful in violation of the Fifth Amendment Due Process Clause and seeks an order compelling his immediate release.  Pet. at prayer ¶ 5.

**3.    LEGAL STANDARD**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Although Congress has barred courts from reviewing certain

---

[3]    As Respondents explain in their Answer, a "Rodriguez bond hearing is a custody redetermination proceeding—required in the Central District of California (for reasons not pertinent here)—where the government must show at six-months (180 days) of detention that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community."  Answer at ECF p. 2, n. 1.

discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).  Petitioner makes such reviewable claims here.

## 4.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

At the outset, it is necessary to discuss whether this Court should even hear this Petition.  Respondents argue that because Petitioner withdrew voluntarily from the Rodriguez bond hearing in May 2026, his habeas petition is barred for failure to exhaust administrative remedies.  See Answer at Part III.B.  Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  Because this requirement is "prudential" and not a "jurisdictional prerequisite," however, it is subject to waiver.  Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").

Generally, prudential exhaustion may be required where the following factors are met: "(1) agency expertise makes consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted).  Even if the Puga factors weigh in favor of prudential exhaustion, courts may waive the prudential exhaustion requirement if the petitioner demonstrates one of the following factors applies: (1) "administrative

remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury would result," or (4) "the administrative proceedings would be void."  Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Here, even if the Court assumes that the Puga factors apply, Petitioner's pursuit of administrative remedies would be inadequate and futile.  The administrative remedy Respondents suggest – a post-deprivation Rodriguez bond hearing before an Immigration Judge ("IJ") – would be incapable of addressing the injury alleged.  Petitioner claims that the original constitutional transgression occurred when ICE re-detained him without notice or a pre-deprivation hearing.  A post-deprivation bond hearing – let alone one at least six months after the re-detention – would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest.  See Padilla v. Mullin, No. 3:25-cv-270-ART-CSD, 2026 WL 1245462, at *3 (D. Nev. May 6, 2026) ("[Petitioner's] challenge falls squarely into the futility exception to prudential exhaustion … [Petitioner's] claim is that he was entitled to process before DHS could detain him, and that the Government's failure to provide him with pre-deprivation process makes his detention unconstitutional … No post-detention custodial hearing could fully address [Petitioner's] complaint or award him sufficient relief.").  Petitioner's claim falls squarely into the futility exception to prudential exhaustion.  Therefore, waiver of the prudential exhaustion requirement is appropriate, and the Court will proceed to consider the merits of Petitioner's due process claim.

**B.      Petitioner's Re-Detention Violates Due Process**

Petitioner alleges that his re-detention violates the Due Process Clause of the Fifth Amendment.  See Pet. at ¶¶ 53-61.  Respondents do not directly address Petitioner's due process claims.  See generally Answer.  Instead, Respondents contend that DHS is "permitted to arrest and detain an alien 'pending a decision on

whether the alien is to be removed from the United States.'" See Answer (Doc. No. 11) at ECF p. 3, lns. 18-19.  Accordingly, Respondents argue that they are "broadly authorized to exercise their discretion to revoke release under this authority pursuant to 8 CFR § 241.1(1)(1) and 8 CFR § 241.4(1)(2)." Id. at lns. 20-22. Respondents also argue that the Court's intervention is unnecessary because Petitioner may unilaterally request a new bond hearing. Id at ECF p. 4, lns. 5-7. After evaluating the merits of Petitioner's due process challenge, the Court concludes that the revocation of Petitioner's ROR status and resulting re-detention violates Petitioner's right to procedural due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const. amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).

Here, Respondents argue (as they do now in many similar cases) that they are permitted by statute to arrest and detain a noncitizen during removal proceedings.  See Answer at ECF p. 3, lns. 18-20.  "[T]he government's discretion to incarcerate noncitizens is always constrained by the requirements of due process ..." however.  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017) (emphasis added).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's

6

constitutionally protected interest in avoiding physical restraint.'" Id. at 990 (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998).  The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required.  Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976).  Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

i.     **Petitioner Has a Constitutionally Protected Liberty Interest in his Release on Recognizance**

As noted above, after Petitioner unlawfully entered the United States and was detained by immigration officials, DHS officials initiated removal proceedings against him and released him on his own recognizance.  Pet. at ¶ 14.  Numerous Federal Courts have recognized a constitutionally protected liberty interest in such release.  Noncitizens in such circumstances "gained a liberty interest in their continued freedom when DHS elected to release them on their own recognizance under section 1226(a), which implied a promise that they would not be re-detained so long as they abided by the terms of their release."  Valencia Zapata v. Kaiser,

7

801 F. Supp. 3d 919, 934 (N.D. Cal. 2025); see also Zheng v. Noem, No. EDCV 26-0675 JGB (RAO), 2026 WL 851434, at *3 (C.D. Cal. Mar. 25, 2026) ("the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance."); Gourav v. Janecka, No. EDCV 26-01253-MWF (DSR), 2026 WL 966568, at *2 (C.D. Cal. Apr. 7, 2026) (noncitizen detained upon entry without inspection and seeking asylum who was then released on his own recognizance pending removal proceedings and who thereafter attended his check-ins and immigration court hearings, obtained work authorization, and lived in the community for two years had a protected liberty interest in remaining out of custody following his release on his own recognizance); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1067, 1069 (E.D. Cal. 2025) (noncitizen detained at border then released pending removal proceedings has protected liberty interest in that own-recognizance release for purposes of due process analysis).  The release on own recognizance of a noncitizen apprehended at the border is an implicit promise that he or she would be able to stay free from detention for the duration of administrative proceedings absent changed circumstances, and thus a protected liberty interest for purposes of due process analysis.  See Banol v. Warden, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026).

This Court agrees with those cited above that Petitioner has a constitutionally protected liberty interest in his ROR, of which Respondents deprived him when they re-detained him during the raid at the Home Depot. Respondents do not dispute the point.  The question then becomes whether Respondents complied with due process in revoking that interest.

**ii.    Respondents' Deprivation of Petitioner's Liberty Interest by Revoking his Recognizance Release Failed to Comply with the Requirements of Due Process**

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in <u>Mathews v. Eldridge</u>.  <u>See</u> <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the <u>Mathews</u> test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under <u>Mathews</u>, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  <u>Mathews</u>, 424 U.S. at 335; <u>see also</u> <u>id.</u> at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Here, the balance favors Petitioner.

**a.    Private Interest**

Petitioner's private interest is substantial.  As discussed above, Petitioner has a recognized interest in his liberty under the terms of his ROR.  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987).  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects."  <u>Id.</u> at 690.  As such, the first <u>Mathews</u> factor weighs strongly in Petitioner's favor.

9

### b.    Risk of Erroneous Deprivation

Regarding the second <u>Mathews</u> factor, the risk of erroneous deprivation of that interest through the procedures used is significant because there do not appear to have been <u>any</u> procedures used to determine whether there were grounds to revoke Petitioner's ROR.  According to the Petition, Respondents re-detained Petitioner without notice, without a warrant, and without "a process for Petitioner to contest his re-detention."  Pet. at ¶ 17.  Respondents do not contest these allegations, nor do they offer any facts themselves about why Petitioner's ROR was revoked, leading to his re-detention.  <u>See generally</u> Answer.

Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  <u>Zadvydas</u>, 533 U.S. at 690.  "Under federal regulation, DHS's decisions to release [noncitizens] on own recognizance necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk."  <u>Valencia Zapata</u>, 801 F. Supp. 3d at 934 (citing 8 C.F.R. § 1236.1(c)(8)); <u>see also</u> <u>J.A.E.M.</u>, 812 F. Supp. 3d at 1064 (release on own recognizance reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk) (quoting <u>Saravia v. Sessions</u>, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017)).

Perhaps there was some change in circumstance that could justify reconsideration of that determination and revocation of Petitioner's ROR – though Respondents do not offer any here.  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for his detention."  <u>Fernandez v. Semaia</u>, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026).  Of course, here, we know even less about what basis (if any) Respondents had to revoke Petitioner's ROR and re-detain him.  Thus, the second Mathews factor similarly favors Petitioner in this case.

**c.    Government Interest**

Regarding the third Mathews factor, Respondents do not assert any countervailing interest.  "The government interest in immigration enforcement in general is surely substantial."  Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020).  As in Zerezghi, however, that is not the interest that needs to be weighed in this case.  The government interest at issue here is revocation of an ROR and re-detaining Petitioner, and in doing so without any hearing.  Courts have routinely recognized that such interest is "low."  See, e.g., Gourav v. Janecka, supra, 2026 WL 966568, at *3; Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).  "This

11

is particularly so where the Government has not shown — or, as here, attempted to substantively argue — that Petitioner's detention serves either to prevent flight or a danger to the community."  Gourav, 2026 WL 966568, at *3 (internal quotations and citations omitted).

Thus, the Matthews balance tips decidedly in favor of Petitioner on this record.  The Court therefore concludes that the revocation of Petitioner's ROR and resulting re-detention on October 20, 2025, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").  Habeas relief is appropriate on that basis.

**C.     A Post-Deprivation Hearing is Insufficient**

Respondents argue that "[t]he Petition should be denied because Respondent can unilaterally request a new Rodriguez [footnote omitted] bond hearing at any time without the need for intervention from this Court – the appropriate remedy as opposed to outright release."  Answer at ECF p. 2, lines 6-8. Though not couched as such, this may be an attempt to argue that Petitioner's due process claim should fail because post-deprivation process satisfies the Fifth Amendment here.  To the extent this is what Respondents mean to argue, the Court is not persuaded.

A post-deprivation hearing cannot satisfy the requirements of due process in these circumstances.  Offering a detainee a hearing on the revocation of his constitutionally protected interest in his ROR only after he has already been detained for six months (during which he missed the birth of his child) does not satisfy the Fifth Amendment in these circumstances.  "Due process generally includes an opportunity for some type of hearing <u>before</u> the deprivation of a protected property interest."  <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1317 (9th Cir. 1989) (emphasis added) (citing <u>Memphis Light, Gas & Water Div. v. Craft</u>, 436 U.S. 1, 19, (1978); <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>, 864 F.2d 1475, 1481-82 (9th Cir.1989)).  While Courts have recognized that a post-deprivation hearing can sometimes satisfy the requirements of due process, that is the exception, not the rule.  <u>See</u> <u>Soranno's Gasco</u>, 874 F.3d at 1317 (noting that there are "exceptions to the pre-deprivation hearing requirement" permitting post-deprivation procedures such as "the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process").  Indeed, the Supreme Court has held "[w]e tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 53 (1993) (internal quotations and citations omitted); <u>see also</u> <u>Shinault v. Hawks</u>, 782 F.3d 1053, 1058 (9th Cir. 2015) ("post-deprivation process can suffice 'in limited cases' when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted.").

Respondents have not offered any "necessity of quick action" or "impracticability of providing any meaningful predeprivation process" to justify reliance on post-deprivation process for revocation of Petitioner's ROR, let alone a <u>Rodriguez</u> hearing that is not available until six months after the revocation and re-

detention.  If there were grounds to revoke Petitioner's ROR, it would not have been "impracticable" for immigration authorities to provide Petitioner with meaningful pre-deprivation process over the two-year period that he was released on recognizance.  Further, notice would have permitted Petitioner to consider whatever the alleged basis for revocation was, potentially gather relevant evidence to counter the allegations against him, and prepare a case in his own defense.  None of that was possible, however, because Petitioner had no notice that revocation of his ROR was even going to be considered.  Petitioner was simply rounded up as part of an indiscriminate raid at a Home Depot.

Nor is there any substantial assurance that the deprivation of Petitioner's liberty interest is not baseless or unwarranted.  Even in their Answer filed more than seven months after they re-detained Petitioner, Respondents proffer no justification – no change in circumstances – for why they revoked Petitioner's ROR status and re-detained him.  Accordingly, the Court finds that a post-deprivation hearing is insufficient in this case.

### D.      Immediate Release Is the Appropriate Remedy

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release on recognizance before his current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained

14

in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").  Accordingly, the Court orders that Petitioner be immediately released.

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the wrongful deprivation of that status.  For the same reason that Respondents may not revoke Petitioner's ROR without affording Petitioner due process, they also may not change the conditions of that release without affording Petitioner due process.  That is not to say that those conditions may never be changed, only that any change in those conditions requires due process of law – notice and an opportunity to be heard.  Return to the status quo similarly means return to Petitioner any personal property and documents seized from him at the time of his detention.

Finally, Petitioner requests in the Petition that the Court "[e]njoin Respondents from re-arresting Petitioner without a pre-deprivation hearing before a neutral decisionmaker where Respondents bear the burden of proving by clear and convincing evidence that a material change in circumstances require Petitioner's detention, and where the decisionmaker considers alternatives to detention and ability to pay bond;"  Pet. at ECF p. 20, lns. 7-11 (prayer ¶ 8). Though given the opportunity to do so in their Answer, Respondents do not address that issue at all.  The Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty.  Further,

such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)).  Habeas relief is not limited to "discharge of the applicant from physical custody.  Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  The Court finds Petitioner has made such a showing here.  First, Petitioner has suffered an irreparable injury by being re-detained without due process of law, and would again if Respondents repeat such conduct.  There is no indication that Respondents' well-publicized efforts to detain non-citizens no longer pose a threat to Petitioner of a repeat of the same deficient re-detention he suffered last October.  Second, legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty while he is in detention awaiting court action on another habeas petition again challenging the deprivation of his due process rights.  And finally, the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they again seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and sue to win his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.  Thus, a permanent injunction prohibiting Respondents from

16

repeating the same unconstitutional re-detention of Petitioner that necessitated this habeas case is appropriate.

### E.   Petitioner's Remaining Claims and Request for Relief

Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it is unnecessary to reach his alternative argument for violation of substantive due process. <u>See generally</u> Pet. at ¶¶ 57-61.

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the Equal Access to Justice Act. <u>Id.</u>, prayer ¶ 10. The Court will consider requests for costs and attorney's fees upon compliance with Local Rules 54-2 (costs) and 54-7 (attorney's fees).

### 5.   CONCLUSION

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241.

**IT IS THEREFORE ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **GRANTED**.

2. Respondents shall immediately release Petitioner <u>**R.N.G.**</u> **(A-245-503-424)** from custody and reinstate his release under the same conditions that were in place before his re-detention on October 20, 2025.

3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4. Within two days of the date of this Order, Respondents shall file with the Court a status report confirming Petitioner's release and return of any personal property and documents.

5. Respondents are enjoined from re-detaining Petitioner without prior notice and an opportunity to be heard on the reasons for the proposed revocation of ROR and re-detention.

6. The Court will issue Judgment consistent with this Order.  Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules.  The Court retains jurisdiction to adjudicate any collateral enforcement issues.

**IT IS SO ORDERED.**

DATED: July 14, 2026

_____
HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

18